UNITED STATES DISTRICT COURT **14 CV   6388**
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ALBERTO RIVERA Individually and on Behalf of :    ECF CASE
All Other Persons Similarly Situated,          :

             Plaintiff,             :    No.: _____

                 JUDGE BRODERICK : 

    v.                                :    CLASS ACTION COMPLAINT

                                     :    JURY TRIAL DEMANDED

PIZZA HUT OF AMERICA INC., ADF PIZZA I, : 
LLC, and ABC CORPORATIONS #1-20, Jointly :
and Severally,                       :

             Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## INTRODUCTION

1.     Plaintiff Alberto Rivera ("Rivera") alleges on behalf of himself and other similarly situated current and former employees of Defendants Pizza Hut of America Inc. ("Pizza Hut of Am.") and ADF Pizza I, LLC ("ADF Pizza") (collectively "Defendants" or "Pizza Hut"), pursuant to Fed. R. Civ. P. 23 (a) and (b), for their willful violations of the New York Labor Law ("NYLL") § 196-d.

2.     Plaintiff Rivera further complains on behalf of himself and other similarly situated current and former employees of Defendants and those who elect to opt into this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for Defendants' willful violations of the FLSA.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331, because this action arises under the FLSA, 29 U.S.C. § 216(b) which is a federal statute. This Court also has supplemental jurisdiction over Plaintiff Rivera's NYLL claims under 28 U.S.C. § 1367.

3.     Venue is proper in this district under 28 U.S.C. §1391(b).

4.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.     Plaintiff Rivera was, at all relevant times, an adult individual, residing in Roosevelt, New York, Nassau County.

6.     Upon information and belief, Defendant Pizza Hut of America, Inc. ("Pizza Hut of Am.") is a corporation, organized and existing under the laws of the State of Delaware, is licensed to do business throughout the United States, including the State of New York, and has its principal place of business at 7100 Corporate Drive, Plano, Texas 75024.

7.     Upon information and belief, Defendant Pizza Hut of Am. is an enterprise engaged in commerce or in the production of goods for commerce.  Defendant Pizza Hut of Am. is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00.  These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, uniforms, pizza boxes, and produce.

8.     Upon information and belief, ADF Pizza is a corporation, organized and existing under the laws of the State of Delaware, is licensed to do business in the State of New York, and has its principal place of business at 601 Westchester Avenue, Bronx, New York 10462.

9.    Upon information and belief, Defendant ADF Pizza is an enterprise engaged in commerce or in the production of goods for commerce. Defendant ADF Pizza is engaged in commerce or in the production of goods for commerce, because, *inter alia*, it has employees that handle goods and materials that have been produced for and moved in commerce, and, upon information and belief, its annual gross volume of business is at least $500,000.00. These goods and materials that have been produced for and moved in commerce, which its employees have handled, include, but are not limited to, uniforms, pizza boxes, and produce.

10.    Upon information and belief, ABC Corporations # 1-20 represent the other corporate Defendants, whose identities are presently unknown, that are Pizza Hut franchise locations within the State of New York, operated and/or controlled the day-to-day operations and management, and jointly employed Plaintiff and other similarly situated employees at all relevant times and acted intentionally and maliciously and are "employers" under the FLSA, 20 U.S.C. § 203(d), and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL Section 2 and the regulations thereunder and are jointly and severally liable with the Defendants.

11.    Each Defendant, either directly or indirectly, has hired and fired Plaintiff and other employees, controlled Plaintiff's work schedule and conditions of employment, determined the rate and method of his payment, and kept at least some records regarding his employment.

## NATURE OF ACTION

12.    The FLSA counts service charges, like the mandatory delivery fee, as wages and they must therefore be included in the employees' total remuneration for purposes of determining their rate of pay for overtime purposes. *See* 29 C.F.R. 531.60(a).

13.    Defendants had a policy and practice of not including the mandatory delivery fee in the employees' regular rate of pay when calculating their overtime rate, violating the FLSA.

14.    Under NYLL § 196-d, mandatory delivery fees – like what Defendants charge their customers – are a gratuity that belongs to the employees.

15.    Defendants violated NYLL § 196-d by retaining 100% of the delivery charges.

## STATEMENT OF FACTS

16.    Pizza Hut is an American restaurant chain that offers different styles of pizza along with side dishes including salad, pasta, buffalo wings, garlic bread and desserts.

17.    Pizza Hut is a subsidiary of Yum! Brands, Inc., the world's largest restaurant company and, has more than 6,000 Pizza Hut restaurants in the United States, and employs more than 160,000 individuals.

18.    More than 50 Pizza Hut locations are located within the State of New York.

19.    Pizza Hut customers can order pizzas and other items to be delivered to their home through Pizza Hut's website www.pizzahut.com, Pizza Hut's mobile

application (i.e., an application that is accessed while customers use their iPhone, iPad or Galaxy) and by calling the nearest Pizza Hut location.

20.      Pizza Hut's website and mobile application allow customers to place delivery orders with any Pizza Hut location throughout the United States that makes deliveries.

21.      Pizza Hut of Am. grants franchises to operate Pizza Hut restaurants in the State of New York and throughout the United States and sublicenses the use of Pizza Hut's trademark to the franchisees.

22.      Defendant ADF Pizza is a Pizza Hut franchisee and operates one or more Pizza Hut restaurants in the State of New York.

23.      Pizza Hut of Am. depends on their franchise and corporate-owned locations selling and delivering pizzas under detailed operating standards, and its profits and financial wellbeing depends in large part upon the success of the franchise locations.

24.      As part of the operating standards for the franchises, Pizza Hut of Am. promulgates and implements employment policies including compensation, hiring, training, and management policies for all of their locations, including ADF Pizza's location.

25.      Pizza Hut of Am. maintains control over many aspects of ADF Pizza's location and other franchise locations that directly related to Plaintiff, the Class Members (defined below) and Collective Action Members' (defined below) employment, including specifying the uniforms, equipment and supplies they use, setting their delivery areas, monitoring the delivery times, and detailing the methods and procedures for performing their work.

26.   Individuals who are applying for a position with any Pizza Hut location throughout the United States, complete the same online employment application on Pizza Hut's website: www.pizzahut.com.

27.   Pizza Hut of Am. provides franchises, including ADF Pizza, materials for use in training store managers and employees, and provides posters with directions on how employees perform tasks (e.g., how to build a pizza).

28.   Pizza Hut of Am. develops and maintains hiring policies, including systems for screening applications, interviewing and assessing applications for employment at all of their locations including ADF Pizza.

29.   Pizza Hut of Am. has the ability to stop any violations of its operating standards by terminating or threatening to terminate the franchise agreements.

30.   Pizza Hut of Am. conducts periodic operating standards reviews at each franchise to ensure they are complying with the operating standards.

31.   Pizza Hut of Am. monitors employee performance through required computer hardware and software.

32.   Pizza Hut of Am. discusses with franchises the customer feedback it receives.

33.   Pizza Hut of Am. establishes the menus and food prices for the franchise locations, including ADF Pizza.

34.   Pizza Hut of Am. and ADF Pizza jointly employed Plaintiff Rivera, the Class Members (defined below) and the Collective Action Members (defined below).

35.   Plaintiff Rivera submitted an application for a job with Defendants in or around December 2012, and Defendants subsequently employed him from December

2012 to October 2013 as pizza delivery driver at the Pizza Hut located at 601 Westchester Avenue, Bronx, New York.

36.     As a Pizza Hut pizza delivery driver, Plaintiff Rivera delivered pizzas, bread sticks and other items to Pizza Hut's customers throughout the Bronx.

37.     At any one time, Plaintiff Rivera was working with 10 other pizza delivery drivers.

38.     A high turnover rate exists with pizza delivery drivers, with some quitting and others getting fired.

39.     Pizza Hut imposes a mandatory $2.75 "delivery fee" on customers when a driver makes a delivery.   The $2.75 delivery fee is within the range of what an objectively reasonable customer pays as a tip to a pizza delivery driver and a reasonable customer would expect the $2.75 delivery fee to be paid to the driver as a gratuity.

40.     When Pizza Hut charges its customers the "delivery fee," the bill segregates the delivery fee.

41.     Pizza Hut charges its customers the same delivery fee, regardless of whether they order online using Pizza Hut's website, or using Pizza Hut's mobile application.

42.     Pizza Hut does not explain to its customers, on its website, mobile application or elsewhere: the purpose of the delivery fee (e.g., a fuel surcharge, tolls, overhead, etc.); that it is retaining some or all-of-the fee; or that the delivery fee does not constitute the drivers' tip.

43.     Defendants retain 100% of the $2.75 delivery fee, rather than remitting it to the drivers.

44.     When Pizza Hut customers place their order online or through the mobile application, Pizza Hut's website and application automatically display the amount due including the delivery fee, but do not permit customers to add a gratuity in the amount of their choosing.

45.     When Pizza Hut customers place their order online, Pizza Hut's website informs them the total "does not include tip.  Please remember to show your appreciation to your driver."  (Last visited July 18, 2014).  Pizza Hut's customers reasonably believe this language to mean Pizza Hut does not have the technology for their customers to add an additional gratuity in an amount of their choosing, which is over and above the "delivery fee."

46.     When Pizza Hut customers place their order through the mobile application, Pizza Hut's application does not state whether or not the total includes a tip. (Last visited July 18, 2014).

47.     Pizza Hut's website and application would have the reasonable customer believe the "deliver fee" is a gratuity.

48.     Pizza Hut misled its customers to believe the delivery fee is a gratuity.

49.     On numerous occasions, Pizza Hut customers have told Plaintiff Rivera they thought the delivery fee is a gratuity.  Some of these statements include, in sum and substance, "The charge includes the tip, right?"

50.     From personal experiences and conversations with other Driver Class Members and Collective Action Members, Plaintiff River knows that they, like him, infrequently received gratuities directly from customers.

51.     Pizza Hut's customers infrequently gave drivers gratuities because they reasonably believed the automatic delivery fee was their gratuity.

52.     On information and belief, at least some portion of each "delivery fee" collected by franchisees is paid to Pizza Hut through royalty payments that are calculated as a percentage of a franchisee's revenues (including revenues derived from delivery fees).

53.     All drivers have direct fact-to-face customer interaction and engage in customer service when they make deliveries.

54.     All drivers are the type of employees who customarily and regularly receive tips from customers.

55.     Defendants accepted and retained gratuities belonging to Plaintiff Rivera and the Driver Class Members.

56.     As a result of Defendants' acceptance and retention of gratuities belonging to Plaintiff Rivera and the Driver Class Members, those employees were deprived of gratuities guaranteed to them by the NYLL.

57.     Defendants paid Plaintiff Rivera $7.25 per hour.

58.     Plaintiff Rivera's regular work schedule was 4:00 p.m. to 11:00 p.m., Monday to Saturday, totaling 42 hours per week.  Plaintiff Rivera did not take a meal break during his seven-hour shift.

59.     Defendants paid Plaintiff Rivera and, upon information and belief, the Collective Action Members an hourly rate for performing their duties and did pay them one and one-half (1.5) times their regular hourly rate when they worked more than 40 hours in a week.

-9-

60.     Defendants, however, failed to include in Plaintiff Rivera and, upon information and belief, the Collective Action Members' regular rate of pay, upon which their overtime rate would be calculated, their share of the delivery fee.

61.     By not including the delivery fee in Plaintiff Rivera and, upon information and belief, the Collective Action Members' regular hourly rate, Defendants paid them an overtime rate that is less than one and one-half times their correct regular hourly rate.

62.     Defendants are familiar with the requirements of the FLSA, are aware of their obligation under the FLSA to include the delivery fee when calculating the Collective Action Members' overtime rate, and deliberately disregarded this obligation.

63.     Defendants treated and classified Plaintiff Rivera and, upon information and belief, the Rule 23 Class and Collective Action Members as non-exempt for purposes of being entitled to overtime premium pay.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff Rivera sues on his own and on behalf of a class of persons under Fed. R. Civ. P. 23(a), (b)(2) and (b)(3):

> Driver Class:  All persons whom Defendants are employing and have employed in the State of New York as a "pizza delivery driver" at any time since August 7, 2008 to the entry of judgment in this case, who were non-exempt employees within the meaning of the NYLL, who had direct face-to-face customer integration and whose gratuities Defendants unlawfully retained, violating the NYLL.

65.     The Driver Class Members identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, more than 200 Driver Class Members exist.

66.   Plaintiff Rivera's claim is typical of the claims of the Driver Class, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.

67.   Defendants have acted or refused to act on grounds generally applicable to the Driver Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

68.   Plaintiff Rivera is committed to pursuing this action and has retained competent counsel experienced in employment law, wage and hour law, and class action litigation.

69.   Plaintiff Rivera has the same interest in this matter as all other Driver Class Members and Plaintiff Rivera's claims are typical of Driver Class Members.

70.   Common questions of law and fact exist as to the Driver Class that predominate over any questions solely affecting the individual Driver Class Members, including but not limited to:

a.   whether Defendants employed Plaintiff Rivera and the Driver Class Members within the meaning of the NYLL;

b.   whether the delivery charge is a gratuity within the meaning of the NYLL;

c.   whether Defendants unlawfully retained Plaintiff Rivera and the Driver Class Members' gratuities;

d.    whether Defendants jointly employed Plaintiff Rivera and the Driver Class Members;

e.    whether the corporate Defendants constitute a single integrated enterprise;

f.    whether Defendants are liable for all damages claimed hereunder, including but not limited to, interest, costs and disbursements and attorneys' fees; and

g.    whether the Defendants should be enjoined from such violations of the NYLL in the future.

<u>COLLECTIVE ACTION ALLEGATIONS</u>

71.    Under 29 U.S.C. §207, Plaintiff Rivera seeks to prosecute his FLSA claim as a collective action on behalf of all persons Defendants employed and are employing as "pizza delivery drivers" at any time since August 7, 2011 to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning of the FLSA, who were not paid overtime compensation at the legally required rate for hours worked in excess of forty (40) per workweek, and who had direct face-to-face customer interaction (the "Collective Action Members").

72.    This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, approximately one hundred (100) Collective Action Members exist during the Collective Action Period, most of whom would not be

likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

73.    Plaintiff Rivera will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law, wage and hour law, and collective action litigation. Plaintiff Rivera has no interest that is contrary to or in conflict with the Collective Action Members.

74.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for Collective Action Members to individually seek redress for the wrongs done to them.   No difficulty exists in the management of this action as a collective action.

75.    Questions of law and fact common to Collective Action Members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.   Among the common questions of law and fact common to Plaintiff Rivera and other Collective Action Members are:

          a.    whether Defendants employed the Collective Action Members within the meaning of the FLSA;

          b.    whether Defendants failed to pay the Collective Action Members overtime compensation at the legally required rate for hours

worked in excess of forty (40) hours per workweek, violating the FLSA and the regulations promulgated thereunder;

c.     whether the delivery fee constitutes wages under the FLSA;

d.     whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

e.     whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, costs and disbursements and attorneys' fees;

f.     whether the corporate Defendants constitute a single integrated enterprise;

g.     whether Defendants jointly employed the Collective Action Members; and

h.     whether Defendants should be enjoined from such violations of the FLSA in the future.

<u>FIRST CAUSE OF ACTION</u>

NEW YORK LABOR LAW – UNLAWFULLY RETAINED GRATUITIES
(Brought on behalf of Plaintiff Rivera and the Driver Class Members)

76.     Plaintiff Rivera repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

77.     Defendants are employers within the meaning of NYLL §§ 190, 196-d, 651(5), 652 and supporting New York Statement Department of Labor Regulations and employed Plaintiff Rivera and the Driver Class Members.

78.    The mandatory delivery fee is legally a gratuity that belongs to the delivery personnel.  *Samiento v. World Yacht*, 10 N.Y.3d 70, 883 N.E.2d 990, 854 N.Y.S.2d 83 (N.Y. 2008).

79.    Plaintiff Rivera and the Driver Class Members are victims of a uniform and employer-based compensation policy.  On information and belief, this uniform policy that violates the NYLL has been applied and continues to be applied to all pizza delivery drivers in the State of New York.

80.    Plaintiff Rivera and the Driver Class Members are eligible to receive tips under the NYLL as the principal and regular part of their duties is to have direct customer service.

81.    As a result of Defendants' acceptance and retention of gratuities belonging to Plaintiff Rivera and the Driver Class members, those employees were deprived of gratuities the NYLL guarantees them.

82.    Defendants have willfully violated NYLL § 196-d by unlawfully retaining the delivery fees, which are gratuities that should be remitted to the Driver Class Members.

83.    Due to Defendants' violations of the NYLL, Plaintiff Rivera and the Driver Class Members are entitled to recover from Defendants their unlawfully retained gratuities, liquidated damages, reasonable attorneys' fees, costs, and pre and post-judgment interest.

SECOND CAUSE OF ACTION

FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
(Brought on Behalf of Plaintiff Rivera and the Collective Action Members)

84.     Plaintiff Rivera repeats and realleges each and every allegation of the preceding paragraphs as if fully set forth herein.

85.     At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff Rivera and each Collective Action Member within the meaning of the FLSA.

87.     Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

88.     Plaintiff Rivera consents in writing to be a party to this action under 29 U.S.C. §216(b).  Plaintiff's written consent is attached hereto and incorporated herein by reference.

89.     Defendants were required to pay Plaintiff Rivera and the Collective Action Members no less than one and one-half (1.5) times the regular rate at which they were employed for all hours worked in excess of forty (40) hours in a workweek under the overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

90.     Federal law counts service charges, like the mandatory delivery fee, as wages and they must therefore be included in the Collective Action Members' total remuneration for purposes of determining their rate of pay for overtime purposes. *See* 29 C.F.R. 531.60(a).

91.    Defendants had a policy and practice of not including the mandatory delivery fee in the Collective Action Members' regular rate of pay when calculating their overtime rate.

92.    Defendants had a policy and practice of refusing to pay overtime compensation to their employees at the proper rate.

93.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies under 29 U.S.C. § 255.

94.    As a result of Defendants' violations of the FLSA, Plaintiff Rivera and the Collective Action Members have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation under 29 U.S.C. § 216(b).

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Rivera, on behalf of himself, the Driver Class Members and the Collective Action Members, respectfully requests this Court grant the following relief:

a.    Certification of this action as a class action under Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Driver Class Members and appointing Plaintiff Rivera and his counsel to represent the Driver Class Members;

b.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice under 29 U.S.C. § 216(b) to all similarly situated members of an FLSA opt-in collective action, apprising them of the pendency of this action, permitting them to assert

timely FLSA claims in this action by filing individual Consents to Sue under 29 U.S.C. § 216(b) and appointing Plaintiff Rivera and his counsel to represent the Collective Action Members;

c.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d.     An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

e.     An award of unpaid overtime compensation under the FLSA;

f.     An award for all unlawfully retained gratuities under the NYLL;

g.     An award of liquidated damages as a result of the Defendants' willful failure to pay overtime compensation under the FLSA;

h.     An award of liquidated damages as a result of the Defendants' willful and unlawful retention of gratuities under the NYLL;

i.     An award of prejudgment and post-judgment interest;

j.     An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

k.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Rivera demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      August 7, 2014

                        BRONSON LIPSKY LLP

                        Douglas Lipsky (DL-9372)
                        630 Third Avenue, Fifth Floor
                        New York, New York 10017-6705
                        Phone:  212.392.4772
                        Fax:  212.444.1030
                        dl@bronsonlipsky.com

                        Jeffrey M. Gottlieb (JG-7905)
                        nyjg@aol.com
                        Dana L. Gottlieb (DG-6151)
                        danalgottlieb@aol.com
                        GOTTLIEB & ASSOCIATES
                        150 East 18th Street, Suite PHR
                        New York, New York 10003
                        Phone:  212.228.9795
                        Fax:  212.982.6284

                        *Attorneys for Plaintiff Rivera*

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Pizza Hut of America Inc., *et al.* to pay me wages as required under state and/or federal law and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.


Signature

Date 7/31/14

Print Name  Alberto Rivera